Raed Gonzalez, Esq.
GONZALEZ OLIVIERI, LLC
2200 Southwest Freeway, Suite 120
Houston, Texas 77098
Tel: 713-481-3040
Fax: 713-588-8683
*Counsel of Record for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| Daniel Aguila,<br><br>*Plaintiff*,<br><br>v.<br><br>Alejandro Mayorkas, Secretary of the U.S. Department of Homeland Security; Tracy Renaud, Senior Official Performing the Duties of the Director, U.S. Citizenship and Immigration Services; Wallace L. Carroll, Houston Field Office Director of the U.S. Citizenship and Immigration Services,<br><br>*Defendants*. | Case No. 4:21-cv-364<br><br>Date: February 3, 2021 |

## PLAINTIFF'S COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

This is a complaint for relief under the Administrative Procedure Act ("APA"). The Plaintiff, Daniel Aguila, files the instant complaint against Defendants because the U.S. Citizenship and Immigration Services ("USCIS"), a federal agency within the Department of Homeland Security ("DHS"), violated the APA when it administratively closed Plaintiff's I-485, Application to Register Permanent Residence or Adjust Status ("I-485 Application"), solely based on lack of jurisdiction. *See* Exhibit 1—USCIS Decision.

Plaintiff seeks *de novo* review of the USCIS's final agency decision and a declaratory judgement that: (1) the USCIS has jurisdiction to adjudicate his I-485 Application; and (2) it acted arbitrarily, capriciously, and not in accordance with the federal regulations and Board of Immigration Appeals ("BIA") case law, when it administratively closed said I-485 Application. Plaintiff also seeks relief under the APA to compel the USCIS to reopen and to adjudicate his I-485 Application on the merits.

The instant action is being filed against the following Defendants: Alejandro Mayorkas, in his official capacity as the Secretary of the DHS; Tracy Renaud, in her official capacity as the Senior Official Performing the Duties of the Director of the USCIS; and Wallace L. Carroll, in his official capacity as the Houston Field Office Director of the USCIS.

## I. INTRODUCTION

1. Prior to the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Division C of Pub. L. 104-208, 110 Stat. 3009-546 (1996), aliens in immigration court proceedings were placed in either exclusion or deportation proceedings.[1] In exclusion proceedings, the alien had to have demonstrated that he or she was admissible to the United States. By contrast, in deportation proceedings, the former Immigration and Naturalization Services ("INS"), had to meet its burden to show that the alien was deportable.

2. Whether an alien was placed in exclusion or deportation proceedings turned on whether the alien had made an "entry." Persons in exclusion proceedings were deemed *not* to have "entered" the United States. Therefore, persons in exclusion proceedings are in the same situation as "arriving aliens" now, i.e., as noncitizens who also are deemed not to have been admitted to the United States. 8 U.S.C. § 1101(a)(13)(B). Essentially, "arriving aliens" are considered, in legal terms, to be standing at the border and not technically in the United States.

3. Whether an alien was in exclusion proceedings and has a final order of exclusion, or whether an alien is currently in removal proceedings or has a final removal order, they are able to adjust their status to that of a lawful permanent resident

---

[1] After the enactment of the IIRIRA, exclusion and deportation proceedings were consolidated into one type of proceedings: removal proceedings. *See* 8 U.S.C. § 1229a.

with the USCIS, in accordance with the USCIS's long-standing prior policy. *See* Exhibit 2—Previous USCIS Policy Manual at Vol. 7, Part A, Ch. 3, Sec. D; Exhibit 3—Previous Policy Memorandum; *see also Matter of Yauri*, 25 I&N Dec. 103, 106-07 (BIA 2009) (finding that "arriving aliens" with final removal orders can only adjust their status with USCIS); *Matter of Castro*, 21 I&N Dec. 379 (BIA 1996) (finding that jurisdiction over adjustment applications filed by aliens in exclusion proceedings lies with the former INS).

4. Sometime in 2018, the USCIS began arbitrarily denying or administratively closing *some* adjustment of status applications, but not others, even though they had the exact same fact pattern, based on the purported lack of jurisdiction, in direct violation of its policy manual and memorandum in place at the time, BIA case law and the federal regulations. This is what happened with Plaintiff's case herein, when the USCIS administratively closed his I-485 Application based on a claimed lack of jurisdiciton. *See* Exhibit 1, *supra.*

5. Plaintiff has exhausted his remedies in this case and is not required to do anything further. The USCIS decision explicitly states that there is no appeal from its decision to administratively close Plaintiff's I-485 Application. *See* Exhibit 1, *supra*. It is thus considered a "final" agency action subject to judicial review by this Court for which there can be no judicially-imposed exhaustion requirement. *See Darby v. Cisneros*, 509 U.S. 137, 147 (1993); *see also* 5 U.S.C. § 704.

## II.  JURISDICTION AND VENUE

6. This action arises under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*, and the APA, 5 U.S.C. §§ 701 *et seq.* Because this action arises under the federal laws of the United States, subject-matter jurisdiction is proper under 8 U.S.C. § 1331.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (e) because all relevant actions, including the submission and administrative closure of Plaintiff's I-485 Application, occurred in the USCIS's field office in Houston, Texas.

## III.  PARTIES

8. Plaintiff, Daniel Aguila, is a resident of Houston, Texas. *See* Exhibit 1, *supra*.

9. Defendant, Alejandro Mayorkas, is the Secretary of the DHS. He is sued in his official capacity. He may be served at 2707 Martin Luther King Jr. Ave. SE, Washington, D.C. 20528-0485.

10. Defendant Tracy Renaud is sued in her official capacity as the Senior Official Performing the Duties of the Director of the USCIS. She is sued in her official capacity. She may be served at 20 Massachusetts Avenue, NW, Washington, D.C. 20529.

11. Defendant Wallace L. Carroll is the USCIS Houston Field Office Director. He is sued in his official capacity. He may be served at 20 Massachussetts Ave.,

Room 4210, Washington D.C. 20529.

## IV. STATUTORY AND REGULATORY BACKGROUND

12. Under 8 U.S.C. § 1255(a), an alien may adjust his or her status to that of a lawful permanent resident provided that: (1) the alien was inspected and admitted or paroled into the United States; (2) the alien makes such an application for adjustment of status; (3) the alien is eligible to receive an immigrant visa; (4) the alien is admissible to the United States; and (5) a visa is immediately available to him or her when the adjustment of status application is filed.

13. The USCIS has jurisdiction to adjudicate an adjustment of status application unless the immigration judge has jurisdiction. 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1).

14. The immigration judge has exclusive jurisdiction to adjudicate any application for adjustment of status if the alien is in removal or deportation proceedings (other than an "arriving alien"). 8 C.F.R. § 1245.2(a)(1).

15. An "arriving alien" is one who is "an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport." 8 C.F.R. § 1.2.

16. "An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) [8 U.S.C. § 1182(d)(5)] of the Act." *Id.*

17. The immigration judge can only have jurisdiction over adjustment applications filed by "arriving aliens" if: (1) the alien properly filed the application with the USCIS while the alien was in the United States; (2) the alien departed and returned to the United States pursuant to a grant of advance parole; (3) the application was denied by the USCIS; and (4) the DHS placed the alien in removal proceedings *after* the alien's return to the United States on advance parole or *after* the application was denied. 8 C.F.R. § 1245.2(a)(1)(ii).

18. If the USCIS administratively closes an adjustment of status application on the grounds that it lacks jurisdiction to adjudicate it, the administrative closure would be considered the final agency action in the case. As such, no administrative remedies would be left available to an applicant and the only option is to judicially assert a violation under the APA, 5 U.S.C. §§ 702, 704.

19. "Agency action" is defined to include the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent, or denial thereof, or failure to act. 5 U.S.C. § 551(13).

20. The reviewing court is authorized to compel action by an agency, and hold its actions unlawful and set aside agency action, findings, and conclusions found to

7

be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706.

## V. FACTUAL BACKGROUND

21. Effective March 1, 2003, the DHS assumed responsibility for the functions of the agency formerly known as the "Immigration and Naturalization Service." The Secretary of DHS is now vested with "[a]ll authorities and functions of the Department of Homeland Security to administer and enforce the immigration laws." 8 C.F.R. § 2.1.

22. The USCIS is a bureau within the DHS and delegated supervisory authority over all operations by the Secretary of DHS. *Id.* The USCIS is responsible for accepting and adjudicating all applications for adjustment of status, unless, as detailed above, jurisdiction lies with the immigration judge.

23. The USCIS Houston Field Office is an agency within the DHS and delegated supervisory authority over all operations by the Secretary of DHS. *Id.* The USCIS Houston Field Office is the official with jurisdiction over the administrative closure of Plaintiff's I-485 Application.

24. Plaintiff is a native and citizen of El Salvador. *See* Exhibit 4—Parole Document. He was ordered removed from the United States on September 14, 1999. *See* Exhibit 5—Order of Removal.

25. On June 15, 2016, Plaintiff was paroled into the United States, pursuant to a valid

parole document. *See* Exhibit 4, *supra*.

26. By virtue of being the beneficiary of an I-130 family visa petition filed on his behalf, Plaintiff filed his I-485 Application with the USCIS on April 24, 2018. *See* Exhibit 1, *supra*. However, instead of adjudicating Plaintiff's I-485 Application on the merits, the USCIS administratively closed it on the grounds that it lacked jurisdiction to adjudicate it. *Id.*

27. In administratively closing the I-485 Application, the USCIS found that Plaintiff is currently in removal proceedings and that he is not an "arriving alien" because he returned to the United States as an alien with an outstanding order of deportation. *Id*. As such, the USCIS concluded that Plaintiff could only adjust his status to that of a lawful permanent resident with an immigration judge. *Id*.

28. Given the USCIS's decision to administratively close Plaintiff's I-485 Application, and the fact that Plaintfiff cannot seek adjustment of status with the immigration court, there are no avenues for relief for Plaintiff. Therefore, he now files this Complaint requesting that the Court compel the USICS to reopen and adjudicate his I-485 Application on the merits.

## VI. CLAIMS FOR RELIEF

29. Plaintiff incorporates by reference the allegations in paragraphs 1-28.

30. Plaintiff contends that under the APA, the USCIS's administrative closure of his I-485 Application was "arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with law." *See* 5 U.S.C. § 706(2)(A).

31. The U.S. Supreme Court has held that an agency's actions may be considered arbitrary, capricious, or an abuse of discretion if said actions inexplicably depart from the agency's own course of adjudication, regulations, or policies. *See INS v. Yang*, 519 U.S. 26, 32 (1996) ("Though an agency's discretion is unfettered at the outset, if it announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as 'arbitrary, capricious, [or] an abuse of discretion.'").

32. In this case, the exhibits attached herein establish that the USCIS departed from its own settled course of adjudication in administratively closing Plaintiff's I-485 Application because it has, in the past, issued denials or grants on adjustment of status applications for aliens who have traveled pursuant to a grant of advance parole and who have final removal orders, in accordance with its previous, long-standing policy. *See* Exhibits 5 through 9—Adjustment of Status Decisions.

33. Exhibit 5 demonstrates that the alien was ordered deported, was granted TPS, traveled on advance parole pursuant to the grant of TPS, returned to the U.S., applied for adjustment of status, and was granted such status.

34. Exhibit 6 evidences that the alien's adjustment application was adjudicated and

granted by the USCIS, after he traveled on advance parole, despite the alien being deported and entering the country illegally.

35. Exhibit 7 shows how the USCIS granted an adjustment application and was accorded lawful permanent resident status after the individual traveled on advance parole despite the fact that the individual was previously ordered deported.

36. Exhibit 8 establishes that the USCIS adjudicated the adjustment application but denied it because the applicant failed to file the appropriate Form I-212 with the application. In its decision, the USCIS explicitly stated that it concurred the applicant was an "arriving alien" with an executed order of removal and that the USCIS had jurisdiction to adjudicate his adjustment application.

37. Finally, in Plaintiff's Exhibit 9, the USCIS issued a decision denying the adjustment application because the alien did not file a Form I-212. The USCIS contended that this form was needed because the alien executed his order of removal when he traveled on advance parole.

38. In Plaintiff's case, despite him being an "arriving alien" and executing his order of removal when he departed, the USCIS refused to adjudicate his I-485 Application on the merits, despite the fact that its policy, at the time, was to adjudicate such applications. The USCIS has thus irrationally departed from its correct and settled course of adjudication. As such, it has acted arbitrarily,

capriciously, and abused its discretion.

39. In addition, the USCIS's administrative closure of Plaintiff's I-485 Application is not in accordance with the law.

40. First and foremost, Plaintiff does not have an unexecuted order of removal, because said order was fully executed when he departed the country on advance parole. *See* 8 U.S.C. § 1101(g) ("…any alien ordered deported or removed (whether before or after the enactment of this chapter) who has left the United States, shall be considered to have been deported or removed in pursuance of law"); 8 C.F.R. § 1241.7 ("Any alien who has departed from the United States while an order of deportation or removal is outstanding shall be considered to have been deported, excluded and deported, or removed."); *Matter of Bulnes-Nolasco*, 25 I&N Dec. 57, 58 (BIA 2009) (affirming that an alien's departure from the United States while under an outstanding order of deportation has the effect of executing the deportation order and bringing finality to the deportation proceedings); *Stone v. INS*, 514 U.S. 386, 398 (noting that deportation orders are "self-executing").

41. As noted in the attached exhibits, the USCIS has even conceded that an alien who departs on advance parole is considered to have executed his or her removal order. *See* Exhibits 8—9, *supra*. Accordingly, any assertion by the USCIS stating that Plaintiff's order of removal remains unexecuted and that he is still in removal

proceedings is legally and factually erroneous based on the USCIS's own conclusions.

42. Second, the law clearly states that an alien who is paroled into the United States is an "arriving alien" and is not "admitted" into the country. *See* 8 U.S.C. § 1101(a)(13)(B) ("An alien who is paroled under section 1182(d)(5) of this title or permitted to land temporarily as an alien crewman shall not be considered to have been admitted."); *see also Matter of Oseiwusu*, 19 I&N Dec. at 19-20.

43. In the case at bar, because Plaintiff was paroled into the United States, he was permitted to enter but was not "admitted" as that term is used in the immigration context. *See* Exhibit 4, *supra*. As a result, Plaintiff is an "arriving alien," and only the USCIS has jurisdiction over his I-485 Application. Therefore, the USCIS's interpretation of the law—under its new policy—is entirely erroneous.

44. Third, there is no such status as "an alien with a final outstanding deportation/removal order." As the Fifth Circuit noted in *Gomez v. Lynch*, there are no-subcategories of unlawful status, such as "being present without admission." 831 F.3d 652, 659 (5th Cir. 2016). Therefore, contrary to the USCIS's assertion, there can be no such status as "an alien with a final outstanding/deportation order" under the INA. The USCIS cannot simply append Plaintiff's TPS status with the words "final outstanding deportation/removal order" and call that a status because that would define the meaning of status too

broadly, which is not what Congress intended.

45. Fourth, the USCIS's position that Plaintiff is not an "arriving alien" because of the Miscellaneous and Technical Immigration Immigration and Naturalization Amendments ("MTINA") of 1991 is legally incorrect since MTINA does not alter the fact that Plaintiff is an "arriving alien." Plaintiff can be an "arriving alien" simultaneously while holding TPS status in the same way that lawful permanent residents can be "arriving aliens" if they meet the requirements under 8 U.S.C. § 1101(a)(13)(C).

46. Plaintiff wishes to note that the USCIS's conclusion that he can adjust his status with the immigration court is likewise legally erroneous. As noted above, the immigration court only has jurisdiction over an "arriving alien's" adjustment of status application if the alien: (1) properly filed the application with the USCIS while the alien was in the United States; (2) departed and returned to the United States pursuant to a grant of advance parole; (3) the application was denied by the USCIS; *and* (4) the DHS placed the alien in removal proceedings *after* the alien's return to the United States on advance parole or *after* the application was denied. *See* 8 C.F.R. § 1245.2(a)(1)(ii).

47. The immigration judge does not have jurisdiction over any I-485 Application that Plaintiff might file in removal proceedings because he filed his adjustment of status application with the USCIS *after* he departed and returned to the United

States on parole, not before, and he did not return to pursue that application. *See Matter of Silitonga*, 25 I&N Dec. 89 (BIA 2009) (finding that under the regulations, "Immigration Judges have no jurisdiction to adjudicate an application filed by an arriving alien seeking adjustment of status, with the limited exception of an alien who has been placed in removal proceedings *after* returning to the United States pursuant to a grant of advance parole to pursue a *previously filed* application") (emphasis added). So, while the DHS can certainly initiate new removal proceedings against Plaintiff, he will simply not be able to pursue adjustment of status with the immigration judge.

48. In sum, given the law and evidence presented, Plaintiff maintains that judicial review under the APA is proper in this case because the USCIS has acted arbitrarily, capriciously, has abused its discretion, and has not acted in accordance with the law.

### VII. EXHAUSTION

49. Plaintiff incorporates by reference the allegations in paragraphs 1-48.

50. As noted above, Plaintiff is not required to exhaust his administrative remedies with respect to the administrative closure of his I-485 Application because he is contesting a "final" agency action that is subject to judicial review under the APA.

51. The language of 5 U.S.C. § 704 states that an agency action is "final" without

regard to whether an alien seeks reconsideration or appeal to a higher agency authority, *unless* there is a statute or regulation that requires the alien to file an appeal and the agency action is inoperative during the appeal.

52. In this case, as noted above, the USCIS itself plainly states that Plaintiff cannot appeal the decision to administratively close his case. *See* Exhibit 1, *supra.* Therefore, it is a final agency action and Plaintiff has no other forum to pursue any remedies. *See Darby*, 509 U.S. at 137. As such, there can be no judicially-imposed exhaustion requirement and judicial review is proper before this Court.

## VIII. CONCLUSION

53. For the aforementioned reasons, the decision to administratively close Plaintiff's I-485 Application was arbitrary, capricious, an abuse of discretion, and not in accordance with the law. Therefore, judicial review by this Court is warranted under the APA.

## IX. PRAYER FOR RELIEF

54. Wherefore, Plaintiff respectfully requests that this Court:

   a. accept jurisdiction and venue as proper;

   b. issue a declaratory judgment that the administrative closure of Plaintiff's I-485 Application was arbitrary, capricious, an abuse of discretion, and not in accordance with the law;

   c. issue a declaratory judgment that the USCIS has jurisdiction to adjudicate Plaintiff's I-485 Application;

d. issue an order under the APA to compel the USCIS to reopen and adjudicate Plaintiff's I-485 Application on the merits;

e. grant reasonable attorney's fees, expenses, and costs of court pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

f. grant Plaintiff all other relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ Raed Gonzalez*

_____

Raed Gonzalez, Esq.
Texas Bar No. 24010063
GONZALEZ OLIVIERI LLC
2200 Southwest Freeway, Suite 120
Houston, TX 77098
Phone: (713) 481-3040,
Fax: (713)588-8683
rgonzalez@gonzalezolivierillc.com
*Counsel of Record for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| Daniel Aguila,<br><br>*Plaintiff*,<br><br>v.<br><br>Alejandro Mayorkas, Secretary of the U.S. Department of Homeland Security; Tracy Renaud, Senior Official Performing the Duties of the Director, U.S. Citizenship and Immigration Services; Wallace L. Carroll, Houston Field Office Director of the U.S. Citizenship and Immigration Services,<br><br>*Defendants*. | Case No. 4:21-cv-364<br><br>Date: February 3, 2021 |

## INDEX OF EXHIBITS

Exhibit 1—USCIS Decision
Exhibit 2—Previous USCIS Policy Manual
Exhibit 3—Previous USCIS Policy Memorandum
Exhibit 4—Parole Document
Exhibit 5—Adjustment of Status Decision 1
Exhibit 6—Adjustment of Status Decision 2
Exhibit 7—Adjustment of Status Decision 3
Exhibit 8—Adjustment of Status Decision 4
Exhibit 9—Adjustment of Status Decision 5